WATTS *v.* TIDWELL.

Opinion delivered January 21, 1929.

*Bush, Bush & Bush,* for appellant.

*H. B. McKenzie,* for appellee.

MEHAFFY, J. On the 31st day of March, 1928, Mattie Bowman made a will, and afterwards, on the 12th day of May, died. On the 16th day of May, 1928, the will was filed in the probate court of Nevada County, and admitted to probate and record. On the 25th day of May, J. A. Zackery was appointed executor under the will, and his letters issued and recorded. On the 6th day of July, 1928, John Tidwell and Sid Tidwell perfected an

appeal to the circuit court of Nevada County. On the 10th day of July, 1928, they filed their objections as follows:

(1) They deny that Mattie Bowman signed the alleged will. (2) They deny it was witnessed as therein stated. (3) They allege that the said will was fraudulently prepared and executed. (4) They allege that Mattie Bowman, at the time said will was executed, was mentally incapable of making a will.

The case was tried on the 10th day of July, 1928, before a jury, and a number of witnesses testified that Mattie Bowman was incapable of making the will, and others testified that she was mentally capable of making the will.

James Stevens and W. A. Stevens, witnesses to the will, testified that Mattie Bowman signed the will in their presence, and requested them to sign it, and they did sign it in her presence and in the presence of each other.

This testimony of James Stevens and W. A. Stevens is not contradicted by any direct testimony, but Virgil Alexander testified that he knew Mattie Bowman; that she lived at his house from the Monday after the fourth Sunday in November until just before the 14th of January, 1927. She had a stroke of paralysis, and was there alone, and he got her to come and stay with him. She was not able to take care of herself. This witness also said that Mattie Bowman asked his daughter to do her writing, and said that she could not write on account of the paralysis.

Annie Alexander testified that Mattie Bowman told her that, before she had the stroke, she could write a little, and witness wrote letters for her. This witness testified that Mattie Bowman said she could not write.

The testimony showed that, after the time mentioned by the witnesses when Mattie Bowman said she could not write, her condition gradually grew worse.

Leola Alexander also testified that Mattie Bowman could not write. In addition to this, it is undisputed

that the will was signed "Mattie Bomama," and not Mattie Bowman.

Appellant's first contention is that the court erred in giving instruction No. B, which reads as follows:

"If you find from the evidence in this case that the deceased, Mattie Bowman, did not sign the instrument of writing which has been introduced in evidence as her will, then you will find against the will."

It is argued that the undisputed evidence shows that she did sign the will, and it is therefore contended that it was error to submit that question to the jury.

Appellant cites the case of *High* v. *Sharp*, 166 Ark. 424, 265 S. W. 638. The court in that case instructed the jury as follows:

"I give you in charge § 10494 of Crawford & Moses' Digest, which I here read to you: 'Section 10494. Every last will and testament of real or personal property, or both, shall be executed and attested in the following manner: (1). It must be subscribed by the testator at the end of the will, or by some person for him, at his request. (2). Such subscription shall be made by the testator in the presence of each of the attesting witnesses, or shall be acknowledged by him to have been so made to each of the attesting witnesses."

There were other instructions in that case, but it is unnecessary to set out the others, except number three, which is as follows:

"You are to determine from all the facts and circumstances in evidence whether a compliance with these requirements has been shown by a preponderance of the evidence."

The court said: "Instruction No. 2 declares the statutory requirements of the modes in general for the execution of wills. The appellants offered a general objection to the giving of this instruction. The instruction was in five paragraphs. The undisputed evidence showed that the instrument had been subscribed by the testatrix and that it was made by her in the presence of the attesting witnesses. Therefore there was no issue

to submit to the jury on the first and second paragraphs of the instruction. There was likewise no contention that the entire body of the will was written by the testatrix, and therefore there was no issue to be submitted to the jury under the fifth paragraph. There was an issue on the third and fourth paragraphs, and the court correctly submitted these issues in its instructions Nos. 4 and 6. But the court erred in telling the jury, in its instruction No. 3, that they were to determine, from all the facts and circumstances in evidence, whether the requirements of the statute as set forth in its instruction No. 2 had been shown by a preponderance of the evidence. The appellants duly excepted to the giving of this instruction, and the effect of it was to allow the jury to determine from the evidence whether the requirements in the first, second, and fifth paragraphs of instruction No. 2 had been complied with, when, under the evidence, there was no issue of that kind to be submitted to the jury. The instruction, in this form, authorized the jury to speculate concerning matters about which there was no dispute.''

If appellant was correct in his statement that the undisputed evidence shows that she did sign the will, it would, of course, have been error to submit this question to the jury.

In the case relied on by appellant there was no proof, no issue as to whether she signed the will, and there was no evidence introduced tending to show that she did not sign the will. If that were true here, appellant's contention would be correct. But we do not agree with appellant in this contention. The appellees denied that she signed the will, and witnesses testified that she could not write, and, if she could not, she could not sign the will. And while there is no direct evidence that she did not sign it, there is evidence that she could not write, and this evidence tends to show that she did not sign the will. She certainly knew her name, and, if she could write at all, the presumption is that she could write her name, and spell it correctly. But she did not

spell the name correctly, if she wrote it, and the fact that her name was misspelled and that witnesses testified that she could not write, was sufficient evidence to submit the question to the jury.

"The courts need not discredit what the common experience of mankind relies upon. Judge Cooley once said that 'courts would justly be the subject of ridicule if they should deliberately shut their eyes to the sources of information which the rest of the world relies upon.' Lastly, wherever there is any serious doubt in the law as to whether certain proof is or is not permissible, a safe rule to pursue is to permit the testimony to go to the jury." 10 R. C. L. 862.

If a person should sign an instrument by mark, then evidence that such person could not write would be no evidence that he did not sign the instrument. But, when the instrument is alleged to be signed by the party, and that she wrote her own name, then proof that she could not write is admissible to show that she did not write her name.

Other testimony that tends to prove that she did not sign the will is the physician's testimony that she gradually grew worse after her stroke of paralysis.

"Ofttimes it is necessary to weigh the probative force of evidence offered, compare it with the practical inconvenience of enforcing a rule to admit it, and decide whether, as a matter of good policy, it should be admitted. But to exclude relevant evidence by any positive and arbitrary rule must be not only absurd in a scientific view, but, what is worse, frequently productive of absolute injustice. It may safely be laid down that the less the process of inquiry is fettered by rules and restraints, founded on supposed considerations of policy and convenience, the more certain and efficacious will it be in its operation. * * * The admission of every light which reason and experience can supply for the discovery of truth, and the rejection of that only which serves not to guide but to bewilder and mislead, is the great principle that ought to be the foundation of every

system of evidence. Common experience rather than technical rules should be adopted as the test.'' 10 R. C. L. 861.

It was therefore proper to submit to the jury the question of whether Mattie Bowman signed the will, and this instruction was justified by the evidence of her physical condition, that she could not write, and that the testimony of the physician showed that her condition was gradually growing worse after the time witnesses testified she could not write and before the date of the will.

Appellant next contends the argument of counsel for appellees was improper and prejudicial. It is stated by appellant that the attorney for appellees, in his closing argument, said that Mattie Bowman did not sign the will; that, if she did, she did not know how to spell her name, and if her mental condition was such that she did not know how to sign her name, she was not competent to make a will. Attorney for appellees then said: ''If this is her signature, why did they not bring witnesses to prove her handwriting?'' and ''They should have had letters or other writing showing her signature to compare with the signature to the will.'' This was simply an argument to the jury, and was a proper argument, based on the testimony. *Hall* v. *Jones*, 129 Ark. 18; *Ark. Central Ry. Co.* v. *Goad*, 136 Ark. 437, 195 S. W. 399; *Des Arc Oil Mill* v. *McLeod*, 137 Ark. 615, 206 S. W. 655; *Booth* v. *Racey*, 171 Ark. 561, 285 S. W. 29.

The appellant contends that the appellees' exceptions to the will did not say that Mattie Bowman could not write, but it is admitted that the first exception is a denial that the said Mattie Brown signed the alleged will. Doubtless they expected to prove that she did not sign it by proving that she could not write. At any rate, that was a sufficient allegation that she did not sign it and a sufficient allegation to admit the evidence that she could not sign it because she could not write.

The judgment for costs should not have been against J. A. Zackery personally. He was not a party to the suit in any way except in a representative capacity. But Della Watts was a party to the suit, and the cost will be charged against her and against Zackery as executor.

Except as to the charging the administrator with the cost personally, the judgment is affirmed, and the costs charged against appellants. It is so ordered.